And we'll next hear argument in Dan Harkey et al. v. Howard Grobstein. Good morning. I'd like to reserve five minutes for rebuttal. Please watch the clock. May it please the Court, Sean O'Keefe for the appellants. I'd like to emphasize certain points in my brief. I think the critical point I'd like to emphasize up front is the policy issue here. Hundreds of thousands of contracts are rejected every single year. The conclusiveness of that rejection allows the counterparty to mitigate. That is critical to the system. The body of law that is now before you comes from a single case out of Florida called Inmate Chira, which presents a circumstance that breaks that conclusiveness, that allows the estate to go back two, three, five years in the future, an infinite period of time, and to reinsert itself into a contract. We would need a new form of insurance to deal with contracts with debtors that are rejected to deal with that problem if this case is affirmed. The second point is this Court has already rejected this theory. Could I just interrupt to ask you about mission product? Because one of the theories in your briefing was that once 365d won the time period grant, it was deemed rejected under that statute, assuming that it hadn't been changed by the bankruptcy court's order. The contract was then outside of the bankruptcy estate and outside of the bankruptcy court's jurisdiction. Mission product seems to say that's not the case, but in your response to the 20HA letter on mission product, you seem to suggest that notwithstanding that case, there is still a jurisdictional issue. Can you just clarify that for me? Absolutely. In mission products, the issue was 365g. In particular, in that case, the court not only said it's a breach immediately before the petition date, but I am terminating the license. That's what the Supreme Court had a problem with. The 365g issue is a very simple section that says when you reject a contract post-petition, your claim is deemed immediately prior to the petition date. I said it was a breach of contract, but the contract itself did not disappear or it wasn't rescinded. It didn't evaporate. The contract remains in place. It's just breached. The counterparty retains its rights under the contract, as does the estate has two rights that are accrued up to the petition date. But the contract, or more specifically, the rights and burdens which would otherwise the estate could step into, are not property of the estate post-rejection or pre-rejection because the estate has to step into that contract since it's not a party to it as the petition date. And through the act of assumption, it becomes a party and then assumes those rights and burdens. The point of this Court's past jurisprudence in Ray Lovett and a series of other cases is when you read 541 in section 365, the far more specific section in pari materia, you cannot have the estate be a party to the contract since the only way it can get into that contract is by assuming it, and that's the nature of a contract. It's a voluntary relationship. So what the Supreme Court— I'm not understanding. The estate is a party to the contract. It's just breached the contract. So I thought you said that it no longer could get the benefit of the contract to the extent it was breached, but I don't see why it's not part of the estate. It's a breached contract. That's part of the estate according to mission product. Well, actually, mission products didn't deal with that particular issue, the relationship of the estate to the contract. It dealt with the effect of rejection. Those are two separate issues. The estate being a separate legal entity, it would be as if I threw my brief into the well. The active assumption is me walking around and picking it up. Until I do, it is outside the estate, and that is this Court's jurisprudence. That is also the recent case of matter provider by the Fifth Circuit. That's a function— It gets to be very circular, and this is the difficulty, right? It gets to be very circular. There was an extension. The trustee didn't act. The contract is deemed rejected. It wasn't assumed. That's exactly right. Then, because there's this extension—maybe I should ask it this way. If there hadn't been an extension and just the period to accept or to assume the contract had lapsed, is there any dispute that that would not have been permissible? It would not have been permissible. Okay, so we're talking about this really narrow issue, it seems to me, that because the bankruptcy court had extended that time period, then there may have been jurisdiction to sort of retroactively reopen. That's the—I think that's the Court's reasoning. It was because of that extension that there was this foothold. Is that right? That's exactly right, and this Court has already addressed that in the ANWR decision that I cited. In that particular case, the Court noted that under Rule 4007, it includes the same language within the period of time. And in that case, the time period was extended for the 60-day period, and the attorney blew the deadline by one day. After an extension. Excuse me? After an extension. After an extension. He blew it by one day, and this Court said, we have no power to fix it, the bankruptcy court has no power to fix it. So this language in 9006B refers to the—I guess the party can make a motion after the expiration of the specified period, the extension that was given by the Court, and permit the act to be done where the failure to act was the result of excusable neglect. So given that the Court can allow the act to be done after the expiration of the specified period, why doesn't that necessarily contemplate that the extension can be given retroactively? The B-1 is a general section. B-2 specifically deals with Rule 59 and 60 and says it cannot be extended. It doesn't—well, I'm looking at B-1, and there's two little subparts of B-1, B-1-1 and B-1-2. And I'm looking at B-1-2, which refers to things that can be done after the expiration of the initial period granted by the bankruptcy court. Yes, and in that same language, it says within the period. So if, for example— It says made after the expiration of the specified period. Your Honor, it contemplates that during that period, it gets extended. So let's assume it's extended for 30 days. If within that period of time a new motion is filed, then you can extend again. But then how do I read this language that says, on motion made after the expiration of the specified period, permit the act to be done or the failure to act was the result of excusable neglect? But there's another piece of it there, as I recall, which deals with the motion in this Court's ruling in Southwestern and a series of other cases that say you have to make the motion within the period as extended if you want another extension. I'm just looking at the plain language of 9006B and asking you to explain how I should read that. Your Honor, that language includes a provision which contemplates that it will be made within the period as extended. Can you point me to that language? I apologize, Your Honor. I don't have that in front of me. What you rely on, I think—and I have a question, a related question while you're— I'll just let you know while you're looking for that. It's the rules provision that the time may not be enlarged. There's this express exception for motions made pursuant to Rule 59 or 60B. Yes, Your Honor. In this particular case— Was this made pursuant to 59 or 60B? That's exactly my question. You seem to assume that it was a 59 or 60. Could you help with that? Well, yes. I think that's what you're relying on. It wasn't a motion for a new trial, and it wasn't a motion for reconsideration of an order because the bankruptcy court didn't issue an order. As I understand your theory, you're saying by just function of the statute, it was deemed denied. Let me address the Court's first point. B-1 says, if the request, therefore, is made before the expiration of the period originally prescribed or as extended by previous order, so this Court's— Don't tell me there's an or there, so it's in the alternative and the disjunctive. So now let's look at B-1-2. Your Honor, the B-1-2 in this particular case, to the extent it applies, is precluded by B-2. Okay, so that gets to Judge Creston's question. So your answer to me is that B-1-2 is precluded by 2. So now let's turn to the question of whether this is a Rule 59 or Rule 60 motion. Yes, Your Honor. And basically, the statute says you have 60 days. So it was extended multiple times. So the last deadline was February 28, 2014. Two and a half years later, after that was expired, after the lease was rejected, after the contract was rejected, they came back in and said, now we're filing a motion two and a half years later. So I don't think that gets to Judge Creston's question about why this is a Rule 59 or Rule 60 motion. It is because the Court couldn't modify the statute, so it had to modify the order. The order fixed the last date is February 28, 2014. My question is really specific. Why is it that we treat that as a Rule 59 or Rule 60B motion? Because there's only two rules pursuant to which you can modify an order, 59 or 60 or possibly 52. So in this particular case, that order stood. It's not reconsidering an order necessarily. I'm just trying to play devil's advocate, but I am troubled by the notion that this could be retroactively opened. I'll tell you, I think it's important that people have predictability and know where they are, and this is concerning to me, not that there aren't equities cutting the other way as well. But I'm really trying to hone in on your argument and understand it, sir. So to play devil's advocate, if you would, the trustee didn't act to assume the contract, so it's deemed rejected. I'm with you there. I think you're right that if there hadn't been any extension, then I don't know how this would have happened. But there was an extension, okay? And what I'm having trouble with is your premise that the court was necessarily reconsidering, right, reconsidering or changing that order granting the extension as opposed to going back in and extending it again. Because the order extending it, the last one said your last period of time to assume or reject is February 28th, 2014. So that date passed. At that point, the statute deemed rejected provision rejected the contract automatically. So now at this point, you either have to change the statute or the order. So by default, since the court couldn't change the statute, it had to be the order. So they had to seek recourse under 59 or 60 two and a half years later. I know they don't like that because there's a bar in B-2, but there is no other mechanism. The statute operated to reject as soon as the period passed. Deemed rejected is what the contract says. But the court can extend its own order, can't it? It can before the expiration. Once it expires, this court's jurisprudence in the ANWR case says no, it must be done before the expiration of that period. At least the motion must be filed. This motion was filed two plus years later. Can I ask you one final question because I've indicated to you that I'm troubled by that. I think you make a strong point there. I don't know that the judge lacked jurisdiction, but it's a different question. Could you just spend one minute answering the question about if this is allowed here, where would it end? Would the court be able to do this up until the time the bankruptcy is finally closed? That is exactly right. And that is a huge issue. And this is the Ninth Circuit Court of Appeals. This affirmation is going to be translated through the entire bankruptcy network. The instant a contract is rejected, you bring in a new tenant. You bring in a new supplier. You enter into new relationships to mitigate. We rely on that conclusiveness. The concept that someone could come back two and a half years later and say, only kidding, or I made a mistake, or I'm going to undo that, the entire system is designed to prevent that. So that's the excusable neglect? Because here I think the allegation was that from the trustee was that Mr. Harkey had misrepresented the status of the state of affairs, that a sale was pending when, in fact, there may have been a half-a-million-dollar earnest money in receipt. So what about that? This court has consistently rejected that. In fact, in Lubbock, the court specifically said, and in Ray Tompkins, the court said, it's your job to investigate. The way this works is when the trustees come in, they have a broker drive by. He gives them an appraisal. They look at the value versus secure debt. If there's value, they make their decision. They don't trust the debtors. If you look at the docket report in this case, these people were at war for almost a year. They didn't believe anything Mr. Harkey said. So that's a canard. That's not excusable neglect. You're actually over time, but we'll give you a minute for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Roger Landau, and I am counsel for Trustee Howard Grobstein, the appellee. Thank you. First issue I want to address, Your Honors, is that Point Center Financial is the manager, was the manager, and always was the manager in the operating agreement. It's designated as the manager. For the point, forgive me, but I'm really troubled by this very specific question about jurisdiction. At what point do these deadlines mean anything? It seems to me that counsel has a very strong argument. It troubles me, and I've been very clear about that, but where would this end because predictability is so important to people in these cases? Yes. Judge Kristen, the answer to that is that if you can find a debtor who is dishonest and lies under oath about the assets of the case, and in the event that the court can fashion a relief prior to the bankruptcy case ending, closing, then you can, under 9006, you can find excusable neglect and understand no one has argued. The appellants haven't argued about the findings of the bankruptcy court that excusable neglect occurred. Right. So just talk about jurisdiction, because I think the equities are in your favor. I'm just one of three up here, but I'll give you that. The court still has to have jurisdiction. So let me tell you something that might make you feel more comfortable about it. Are you going to make me feel more comfortable about jurisdiction? Yes. Because that's the issue. Yes. There are cases that get closed, and there are cases where the debtor has not told the truth about assets. This court has reopened cases and has taken assets that are abandoned, and based upon the impropriety of the debtor, have reopened the case, taken jurisdiction, and administered over those assets. I know, sir, but that's not what happened here. No, but that's the greater including the lesser, right? What I'm worried about is affirming this particular order and this particular mechanism, because I'm worried that that would work mischief. I couldn't be any clearer. I don't know how to be any clearer about my concern, and I'm going to give you every fair opportunity. And my point is that reopening a case and administering over an asset that's been abandoned would also create even more mischief. But as to the mischief of 9006B, I think that Judge Okuda got it right in that the plain language of 9006B states what it says, which is if the court, I mean, how often does this happen? When you finish the sentence, if the court what? Oh, I'm sorry. That if the court finds excusable neglect, which is a pretty high standard for a trustee, then it is true that a bankruptcy court would be able to say, oh, yes, the bankrupt lied, and we are going to put this right as if the way it should have been if he hadn't lied. That's not what happened here, sir. You're not responding to my question, which has to do with the findings that were actually made. Well, the findings. In precise terms of the language that Judge Okuda and I are both asking about here. Okay, I'm sorry. That's all right. I'm just trying to give you every shot at explaining it. So let's go. I'd like to go through exactly what happened in the chronology. Can we just walk through that? Sure. So the first thing was the trustee asked for an extension of the 60 days for assuming the operating agreement. Is that correct? Yes. And that was done timely within the 60 days? Yes, Your Honor. Okay. Then the time period of the extension lapsed, and the trustee did not assume the operating agreement, relying on Mr. Harkey's assertions, according to the trustee, that there wasn't any sale pending. Is that correct? Yes, Your Honor. So the extension order lapsed, and then the trustee found out the truth and moved the bankruptcy court for a retroactive extension of the extension order. Is that correct? Yes, Your Honor. Okay. So the question is whether the bankruptcy court had the power to issue that second extension after the first order lapsed. And so why did the bankruptcy court have the power to do that? Because 9006B gave it the power to do that, Your Honor. Are you relying on B1 or B2, sir? The excusable neglect section. Okay. You're relying on B1. Yes. So B1, little 2, I guess, or B1, 2. That's really a terrible way to number the rules. It is. I'm with you on that. You're really bothering me, but that's a different subject. Is B1, 2. The Housing Council says that we have case law that says you can't do that if the motion is filed after the expiration of the period. Is that right? No, it's not. Your Honor, there's two bankruptcy cases. There's one bankruptcy case admittedly in Florida. It's the Chiaro or Chiaro case that follows the reasoning that I'm presenting here. Do we have a case that allows this retroactive extension under B1, 2? In the Ninth Circuit? In the Ninth Circuit, no. No, there isn't. There's one case in Florida that allows it. Do we have any case that says you can't do that? No, Your Honor. And the one case, and the case cited by the appellant, which is in re-federated food courts, is the case that Judge Christin talked about, which is the case where there hasn't been a 9006 extension. And that couldn't be done. Okay, so this is an issue of first impression, is what you're saying, in the Ninth Circuit. Yes, Your Honor. Okay. I'm sorry. Go ahead. But there's some good news, which is that in the bankruptcy case, when we were litigating this, we were worried about presenting a case of first impression in the Ninth Circuit. So instead, on a belt and suspenders way, we talked to the investors, which included a 40% holder, and there was a vote. And the vote of the investors, which they should have the right to vote. Wait a minute. You had the vote of the investors because you didn't want to present a case of first impression to the Ninth Circuit? No, we wanted to do both. We said, okay, we'll have this. I agree. 9006. And there is no demonstration of why the investors cannot vote. I appreciate that. So I read the part of your brief. We've all read your brief. Could I go back to B2? Yes, Your Honor. From B2, it seems to me there's another question here. I think that's right. I think that case fell right on point. If there hadn't been an extension, you'd be having a very tough day, and you might not even be here. Right? But there was an extension. Because of the vote, I'd be here, but okay. Maybe. Okay. But anyway, but there was an extension. And so to go to the – I think both of my colleagues have asked the question about why couldn't the court extend its own period of time. And opposing counsel's argument is really B2, and that's what Judge Akuta and I were getting at a minute ago. I think that part of the argument relies on the assumption, contention I should say, that the motion was really – that the trustee's motion was really a Rule 59 or Rule 60 motion. Do you want to speak to that? It wasn't a Rule 59 or 60 motion. It was a rule – and I agree that this is uncomfortable. It's a Rule 9006B12 motion. Can you explain why we shouldn't deem it to be a motion under Rule 9023 or Rule 9024? Because what you just said is a Rule 59 or 60 motion. But I think that – I just really question whether this needs – the bankruptcy court was really constrained to 9006 at all. It was constrained. I'm sorry, Your Honor. Your response – maybe you just want to go back to Judge Akuta. Why do we have to view this as a 9006 motion at all? It was filed under 9006. It sought relief under 9006, and it fills the exact plain language of 9006. Why shouldn't we deem it because 9006 contemplates that there could be a motion under 9006 that is not permitted because it is also a 9003 or 9004 – in other words, a Rule 59 or Rule 60 motion? Why wasn't this motion a disguised, so to say, Rule 59 or 60 motion? Because the original motion was to extend the time under 9006. It only – it follows that any extension under 9006 would be under the same – These are not tricky questions, and we're not trying to set you up. I'm not. This is about jurisdiction. We understand how the motion was framed, how it was labeled, if you will. But it seems to me that that gets you into this cul-de-sac that is in B2. And I'm just really questioning because I do think there's a strong equitable argument here. The question we have is whether the district – sorry, Bankruptcy Court had the jurisdiction to do this, and Judge Okuda is positing that perhaps there was jurisdiction under 9002. And I want to make sure both of you have an opportunity to respond to that. I'm not sure how to respond at this point other than to tell you that this is – that the court inherently has the power as a trial court to extend its own orders, including the orders that it set its own dates. While you consider further Judge Christin's order, can you just tell me in a global way, what happens if we adopt the rationale in Shira? Because Mr. O'Keefe told us what happens, how everything craters if we affirm. So tell me what happens if we adopt the rationale in Shira. You allow bankruptcy courts to address manifest injustice due to debtors not accurately reflecting their leases, just as you've allowed them to address manifest injustice from them not describing their own assets. Isn't that what happens with 59 to 60 already, though? It's another mechanism of doing that, yes. But there's a specific provision. Well, you create yet another mechanism to muddy the water, then. I think that the waters are muddy. I have three minutes, and I'd like to address one other issue, which is the reason why this may not be – the first 12 minutes may not be that relevant. Equitable – this case is equitably moot. It's not close. What happened here is that the trustee took control of this company. We decided not to invoke equitable mootness because, as a general proposition, there's a lot of confusion around it, and though it's valid in the Ninth Circuit, we're moving away from it. You can move away from it, but you can't structure a form of relief if you ruled in the appellant's favor. The real estate was sold for $8 million. The money was then taken pursuant to court order. There was another court order that said we're going to distribute the $8 million after paying expenses. That was another court order which, by the way, wasn't appealed. It's a final order. Where's the money? The money went to 99.3 percent of the investors. Right, so wasn't that – and that would have happened anyway, right? It seems to me in Chapter 7 what we're talking about is the management fees. This isn't a Chapter 7 case. This is a liquidation of an LLC. I beg your pardon. Okay. But isn't – that's why the money would have gone to the members. So isn't – aren't we just talking about the management fees? The management fees also went out, including the management fees – Went out to the trustee? To the trustee but also to the bank, which was the secured party for the – that had a security interest, the management fees. And the bank has now been paid for its security interest on its security interest for its loan. So it went to the creditors is what you're saying. It went to the creditors. And there's – and if you had to fashion relief here, not only would you have to undo an $8 million sale, undo a foreclosure against the sacks in the entity, but then you'd have to go after – and even if you kept the money in the investors, you'd then have to go and sue the bank for the money that went to them. Yeah, it doesn't seem to me that – I think you're over-excelling it. It doesn't seem – I don't see a reason why the members would have to disgorge. But it is the management fee that's the issue, right? It depends upon how much money it costs to get through all of this. No, it doesn't. But anyway, I think your stronger argument is the management fee would be the issue because the bank has been paid, right? The bank now has been paid, including through payment of the proceeds of the management fees. Yeah. Okay, I understand. If you have any other questions, it's 32 seconds. I apologize if I didn't – You've been very patient. No, you've been very patient, Your Honor, and I apologize if I didn't address all of your issues. But the equitable business issue, Your Honor, it's to try to fashion a relief here. But it allows us to dodge the more complicated issue, but not to address it. Actually, what it does is – remember, there's two orders here. The order that's being appealed is the order that made Point Center the manager. The order that we're talking about now is the order to distribute, which wasn't appealed at all. So what you'd actually have to be doing is you'd have to be undoing a final order of the bankruptcy court by suing the creditors for return of management fees. Okay, I think we have your argument. We'll give you one minute for rebuttal. Okay, thank you, Your Honors. Your Honor, my clients are a very small constituency. The dollars are very small. If this ruling is reversed, they'll file a claim. There are millions of dollars sitting in the bankruptcy estate. The total amount they would be claiming would be $200,000 or $300,000. That's it. Entering an affirmance of this is an affirmance of the entirely unacceptable position in Ray Kira. They didn't just extend once. They extended multiple times. So they knew it was February 28, 2014. Two and a half years later – now, the counterparties to this contract are not Mr. Harkey. It's the 90 investors. It's the landlord in Minnesota. It's the supply contractor in Illinois who's going to see a contract and say, okay, you've rejected my contract. Do I get to go and mitigate? With this ruling, you don't get to go to mitigate because they can always make, well, there's an exclusible neglect. We didn't know the property was worth X or the debtor didn't tell the truth. But the system contemplates that you have to mitigate, and all the other creditors gain because you can mitigate. And that's why this court's jurisprudence is it's conclusive. So this is the worst – They wrap up your overtime. Yeah, this is the worst ruling to affirm, and even if my clients get nothing out of it, this is the one ruling that has to go into the night and be left dead. All right. Thank you. Thank you. The case of Dan Harkey v. Howard Grobstein is submitted.
judges: Ikuta, Christen, Marbley